"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| TRINITY HOTEL INVESTORS, LLC, et al., | ) ) ) ) | SA CV 07-1356 AHS (MLGx) |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS SECOND |
| SUNSTONE OP PROPERTIES, LLC, et al., | ) ) ) | AMENDED COMPLAINT WITH LEAVE TO AMEND |
| Defendants. | ) ) ) | |

**I.**

**PROCEDURAL BACKGROUND**

On August 4, 2008, defendants Sunstone OP Properties,
LLC, Sunstone SH Hotels, LLC, WHP Hotel Owner-1, L.P., SHP Ogden,
LLC, and WB Sunstone-Boise, LLC (collectively "defendants" or
"Sunstone") filed a Motion to Dismiss or, in the Alternative, for
More Definite Statement against claims one and three in the Second
Amended Complaint ("SAC").  On August 22, 2008, plaintiffs Trinity
Hotel Investors, LLC ("Trinity"), HI Boise LLC, HI Craig LLC, HS
Kent LLC, CA Santa Fe LLC, Lynnwood LLC, HI Price LLC, MA Pueblo

1 LLC, CP Williamsburg LLC, HI Renton LLC, HI San Diego LLC, and CP

2 Englewood LLC (collectively "plaintiffs") filed opposition.  On

3 September 8, 2008, defendants filed a Reply.  The Court took the

4 matter under submission on October 15, 2008.

5        Having read and considered the arguments and authorities

6 raised in the parties' briefs and submissions, the Court grants

7 defendants' motion to dismiss in part, with leave to amend.

8                              **II.**

9              **SUMMARY OF SECOND AMENDED COMPLAINT**

10        Plaintiffs purchased thirteen hotels from defendants

11 pursuant to a Purchase and Sales Agreement and Escrow Instructions

12 dated June 19, 2006 ("Agreement").  (SAC ¶ 1.)  Plaintiffs agreed

13 to purchase:  (1) Boise Holiday Inn; (2) Craig Holiday Inn; (3)

14 Englewood Crowne Plaza; (4) Fresno Courtyard by Marriott - Airport;

15 (5) Kent Hawthorn Suites; (6) Lynnwood Courtyard by Marriott; (7)

16 Ogden Marriott; (8) Price Holiday Inn; (9) Pueblo Marriott -

17 Convention Center; (10) Renton Holiday Inn Select; (11) San Diego

18 Holiday Inn - Stadium ("San Diego Hotel"); (12) Santa Fe Courtyard

19 by Marriott; and (13) Williamsburg Crowne Plaza.  (Id. at ¶ 26.)

20 Ten amendments were made to the Agreement between August 4 and

21 September 6, 2006.  (Id. at ¶¶ 27-36.)  On September 12, 2006, the

22 parties signed two "closing letters" regarding the resale of

23 personal property, property improvement plan ("PIP") work, and

24 other post-closing obligations.  (Id. at ¶¶ 37-38.)  The Agreement,

25 along with the amendments and closing letters comprise the

26 "Purchase Agreement."  (Id. at ¶ 38.)

27        Defendants breached the Purchase Agreement and

28 misrepresented material facts regarding the properties.  (SAC ¶

41.)  Defendants breached the Purchase Agreement in four ways:  (1) failure to complete certain PIP work; (2) failure to abide by the second closing letter with regard to water damage sustained at the Williamsburg Crowne Plaza; (3) failure to pay certain sales tax associated with the transaction; and (4) concealment of structural defects at the San Diego Hotel.

First, defendants were to complete certain PIP work at certain hotel properties, as required by the various franchisors, for the issuance of new franchise agreements.  (Id. at ¶ 42.)  At least twenty days before the closing date, defendants were to provide:  (1) invoices for the PIP work that had been completed; and, (2) a cost estimate for the PIP work that had been contracted for but not performed and the PIP work for which defendants had not contracted.  (Id. at ¶ 44.)  Defendants provided plaintiffs with a list of the PIP work completed and the PIP work that remained outstanding along with estimated completion costs ("PIP Reconciliations").  (Id. at ¶ 45.)  A credit was negotiated for the PIP work not completed.  (Id.)  Some of the PIP work that defendants represented was completed on the PIP Reconciliation was not completed or was rejected by the franchisors as unacceptable.  (Id. at ¶¶ 47-48.)  As a result, plaintiffs expended at least $1.8 million to complete the PIP work.  (Id. at ¶ 49.)

Second, defendants agreed to submit an insurance claim with respect to water damage sustained at the Williamsburg Crowne Plaza within ten days of closing.  (SAC ¶ 50.)  If defendants' insurance company rejected the claim, defendants were to pay plaintiffs a "Purchase Price Casualty Credit" within ten business days.  (Id. at ¶ 51.)  Defendants' insurance claim was rejected by

the insurer but defendants failed to pay the Purchase Price
Casualty Credit. (*Id.* at ¶¶ 52-53.) Plaintiffs originally
estimated that it would cost $90,000 to repair the water damage,
but a current estimate places the repair cost at $100,127. (*Id.* at
¶ 54.)

Third, defendants were to pay any and all sales tax as a
result of the transaction and the sale of any personal property,
according to the Purchase Agreement. (SAC ¶ 55.) Defendants
failed to pay sales taxes to Washington and Colorado. Plaintiffs
have paid $62,207.91 in sales tax, including penalties and
interest, in connection with the Renton Holiday Inn Select,
$55,458.84 in connection with Kent Hawthorn Suites, $50,578.79 in
connection with the Lynnwood Courtyard by Marriott, and $54,912.58
in connection with the Pueblo Marriott - Convention Center. (*Id.*
at ¶ 57.)

Fourth, defendants concealed material structural defects
in the San Diego Hotel. Plaintiffs conducted due diligence prior
to the purchase of the San Diego Hotel and identified certain
defects, such as an uneven floor in the lobby. (SAC ¶ 60.) On
July 20, 2006, Brian Martin ("Martin") of Trinity wrote to
defendants' Hunter Oliver ("Oliver") and requested any engineering
reports in connection with the lobby floor problems at the San
Diego Hotel. (*Id.* at ¶ 60.) That same day, Oliver responded that
plaintiffs already had copies of the "LandAmerica Reports" and that
he was "not aware of any specific reports that address the floor."
(*Id.*) The "LandAmerica Reports" referred to by Oliver is the April
19, 2006 "Draft Property Condition Report" prepared by Land America
Assessment Corporation ("LAC Report"). (*Id.* at ¶ 61.) But, the

4

LAC Report did not identify any issues regarding the floor at the San Diego Hotel.  (Id.)

Following closing, plaintiffs discovered Oliver's representation that there were no reports regarding the floor of the San Diego Hotel was false and that defendants deliberately concealed significant structural problems.  (Id. at ¶ 62.)  E-mails between Mark Lane ("Lane") of Sunstone Hotel Properties, Inc., and colleagues at defendants, from June 8 to June 20, 2006, stated that significant structural repairs were necessary under the ballroom and possibly the restaurant of the San Diego Hotel.  (Id.)  Lane was sent a letter, dated June 27, 2005, from Robert L. Nowak, president of the structural engineering firm Nowak + Wiseman, which identified structural items that needed to be repaired at the San Diego Hotel.  (Id. at ¶ 63.)  Martin was assured by Oliver, who was then Vice President of Acquisitions for Sunstone Hotel Investments, Inc., on at least two occasions prior to closing that any flooring issues at the San Diego Hotel had been repaired.  (Id. at ¶ 65.) On February 16, 2007, plaintiffs received a report they commissioned from EBI Consulting, which found structural problems at the San Diego Hotel and recommended costly repairs.  (Id. at ¶ 67.)  Plaintiffs estimate they have incurred more than one million dollars in repairs to the floors at the San Diego Hotel and will spend another $350,000 to complete the work.  (Id. at ¶ 69.) Consequently, plaintiffs have experienced business interruptions as a result of the repairs that have cost approximately $225,292 and will incur an additional $60,000 in future business interruptions.  (Id.)

Plaintiffs' SAC alleges claims for "breach of the duty"

of good faith and fair dealing, breach of contract, and fraud.

### III.

#### SUMMARY OF PARTIES' CONTENTIONS

**A.        Defendants' Motion to Dismiss**

Defendants move to dismiss plaintiffs' claims for breach of the implied covenant of good faith and fair dealing and for fraud. First, defendants contend that the claim for the breach of the implied covenant fails as a matter of law because it duplicates the breach of contract claim. Second, defendants argue that the fraud claim fails because plaintiffs did not reasonably rely on any of defendants' representations and that certain allegations do not meet the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)").

> **1.    Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing**

Plaintiffs allege that defendants breached the implied covenant of good faith and fair dealing by failing to complete certain PIP work at the purchased hotels. (Defs.' Mot. to Dismiss at 2.) PIP work is work that is required by hotel franchisors to be completed when a hotel is sold before a franchisor will issue a new franchise agreement to the buyer. (Id. at 2-3.) The Purchase Agreement states that defendants would start the PIP work and that the parties would negotiate a credit for the PIP work that remained incomplete at closing. (Id.; see also Declaration of Amy J. Laurendeau filed in Support of Defs.' Mot. to Dismiss ("Laurendeau Decl."), Ex. A §§ 6.7.6.2 - 6.7.6.4.) Plaintiffs allege that defendants claimed to have completed certain PIP work that was, in fact, not completed at the time of closing or was rejected by the

1  franchisors because the work failed to comply with brand standard.

2  (Defs.' Mot. to Dismiss at 3.)  Consequently, defendants' failure

3  to abide by the Agreement constitutes a breach of the implied

4  covenant of good faith and fair dealing.  (Id.)

5       Plaintiffs' claim for a breach of the implied covenant of

6  good faith and fair dealing is a reiteration of plaintiffs' breach

7  of contract claim and attempts to make a tort claim out of a

8  contract dispute.  (Defs.' Mot. to Dismiss at 3 citing Careau & Co.

9  v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1395, 272

10  Cal. Rptr. 387 (1990) ("If the allegations do not go beyond the

11  statement of a mere contract breach and, relying on the same

12  alleged act, simply seek the same damages or other relief already

13  claimed in a companion contract cause of action, they may be

14  disregarded as superfluous as no additional claim is actually

15  stated."); see also Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317,

16  326-27, 100 Cal. Rptr. 2d 352 (2002).)  To assert a breach of the

17  implied covenant of good faith and fair dealing, plaintiffs must

18  show that defendants' conduct "demonstrates a failure or refusal to

19  discharge contractual responsibilities, prompted not by an honest

20  mistake, bad judgment or negligence but rather by a conscious and

21  deliberate act."  (Defs.' Mot. to Dismiss at 4 quoting Careau &

22  Co., 222 Cal. App. 3d. at 1395.)  Plaintiffs must plead facts

23  showing bad faith.  (Defs.' Mot. to Dismiss at 4 citing Houque v.

24  City of Holtville, 2008 U.S. Dist. LEXIS 35258 at *11 (S.D. Cal.

25  Apr. 30, 2008) (court dismissed a plaintiff's claim for breach of

26  good faith where plaintiff failed to allege that the defendant was

27  "prompted by a 'conscious and deliberate act, which unfairly

28  frustrate[d]' the purposes of the parties' written contract")

1  (quoting Careau & Co., 222 Cal. App. 3d at 1395).)

2        Here, plaintiffs allege that defendants breached the

3  implied covenant of good faith and fair dealing by "'fail[ing] to

4  comply with the duty complete [sic] the Outstanding PIP Work that

5  they identified has [sic] having been completed because the

6  improvements were either not made or not performed in conformity

7  with the properties' brand standards as required by the Purchase

8  Agreement.'" (Defs.' Mot. to Dismiss at 3 quoting SAC ¶ 73

9  (Brackets in original.).)  This claim is subsumed within

10 plaintiffs' breach of contract claim, which is based on defendants'

11 failure to "complete PIP items that they said were completed or

12 failed to perform the PIP work in conformity with the properties'

13 brand standards as required by the Purchase Agreement." (Id. at 3-

14 4 quoting SAC ¶ 79.)

15       **2.   Plaintiffs' Fraud Claim**

16       Plaintiffs' claim for fraud rests on two assertions:  (1)

17 undisclosed reports relating to alleged structural defects at the

18 San Diego Hotel; and, (2) failure to complete PIP work.  To

19 establish a claim for fraud, plaintiffs must prove:  "'(a)

20 misrepresentation (false representation, concealment, or

21 nondisclosure); (b) knowledge of falsity (or "scienter"); (c)

22 intent to defraud, i.e., to induce reliance; (d) justifiable

23 reliance; and (e) resulting damage.'" (Defs.' Mot. to Dismiss at

24 4-5, quoting Engala v. Permanente Med. Group, Inc., 15 Cal. 4th

25 951, 974, 64 Cal. Rptr. 2d 843 (1997) (quoting Lazar v. Superior

26 Court, 12 Cal. 4th 631, 638, 49 Cal. Rptr. 2d 377 (1996)).)

27       **a.   Plaintiffs' structural defect fraud allegations**

28       Plaintiffs allege one concrete misrepresentation in the

8

SAC.  (Defs.' Mot. to Dismiss at 5.)  Specifically, plaintiffs allege that the floor in the lobby of the San Diego Hotel was uneven and they asked Oliver (defendants' then Director of Acquisitions) whether defendants had any engineering reports in connection with the lobby floor.  (Id.)  Plaintiffs allege that Oliver stated that plaintiffs "already had copies of the 'LandAmerica Reports,' and that he was 'not aware of any specific reports that address the floor.'"  (Id. quoting SAC ¶ 60.)

Plaintiffs assert that Oliver's statement was a "patent misrepresentation" because defendants' other employees were aware of the structural issues under the ballroom and a different employee, Lane, then a project manager, received the June 27, 2005 letter from Mr. Nowak the previous year.  (Defs.' Mot. to Dismiss at 5.)  Plaintiffs do not allege that Oliver was aware of any engineering reports addressing the lobby floor besides the LAC Report.  (Id. at 6.)  Plaintiffs do not allege that Oliver was a participant in the e-mail correspondence or a recipient of Mr. Nowak's letter.  (Id.)  Therefore, plaintiffs do not state a misrepresentation of any kind, much less the sort of intentional misrepresentation necessary for a claim for fraud.  (Id.)  Further, Oliver never denied the existence of reports concerning flooring issues at the San Diego Hotel, only that he was "not aware" of any reports.  (Id.)

Plaintiffs could not have reasonably relied on Oliver's representations because plaintiffs identified defects in the hotel floor through their own due diligence.  (Id.)  Plaintiffs had actual notice of possible structural issues concerning the flooring at the San Diego Hotel, which they contracted to purchase on an

"as-is" basis.  (<u>Id.</u>; <u>see also</u> Laurendeau Decl., Ex. A ¶ 11.1.)

Plaintiffs do not contend that defendants discouraged them from

conducting their own inspection of the San Diego Hotel, and, in

fact, plaintiffs did conduct such an inspection prior to closing

and negotiated extensions of the inspection periods with

defendants.  (<u>Id.</u>)

While an "as-is" clause does not confer general immunity

on the seller for fraud, the buyer is charged with knowledge of

anything that is visible to, or observable by, him.  (Defs.' Mot.

to Dismiss at 7, citing <u>Lingsch v. Savage</u>, 213 Cal. App. 2d 729,

740-42, 29 Cal. Rptr. 201 (1963).)  Courts have noted that an "as-

is" provision serves as a red flag warning to buyers that the goods

or property to be sold might not be in perfect condition or of

ideal quality.  (<u>Id.</u> citing <u>Shapiro v. Hu</u>, 188 Cal. App. 3d 324,

333, 233 Cal. Rptr. 470 (1986).)  In practice, when commercial

parties use an "as-is" clause, it raises the "observable" standard.

(<u>Id.</u>)  Plaintiffs conducted inspections with trained professionals

and identified matters of concern.  Where a buyer inspects the

property, the buyer will be "conclusively presumed to have acquired

all of the information which would be disclosed to him if his

inquiry should be pursued with ordinary diligence."  (Defs.' Mot.

to Dismiss at 7, quoting <u>Gifford v. Roberts</u>, 81 Cal. App. 2d 712,

718, 184 P.2d 942 (1947) (citing <u>Carpenter v. Hamilton</u>, 18 Cal.

App. 2d 67, 71, 62 P.2d 1376 (1936)).)  Plaintiffs do not allege

that the structural defects would not have been discovered through

a reasonably diligent investigation.  (<u>Id.</u>)

Lastly, to establish a claim for fraud, the alleged

misrepresentation must have been of a material fact. (Defs.' Mot.

10

to Dismiss at 8, citing <u>Chalas v. Andersen</u>, 192 Cal. App. 2d 452, 456, 13 Cal. Rptr. 257 (1961) ("'to make out a case of actionable fraud it must appear that the alleged false representation was of a material fact; and to be material it must be such that the contract would not have been entered into without it'") (quoting <u>Crow v. Kenworthy</u>, 30 Cal. App. 2d 313, 315, 86 P.2d 154 (1939)).)
Plaintiffs were aware of the patent conditions that caused them concern about structural features of the San Diego Hotel, which they were planning to purchase "as-is." (<u>Id.</u>)  That Oliver was personally unaware of any engineering reports cannot have been material to the transaction.  (<u>Id.</u>)

<b>b.   Plaintiffs' PIP work fraud allegations</b>

Plaintiffs' fraud claim as to the PIP work is the same as their breach of contract claim. (Defs.' Mot. to Dismiss at 8.) Plaintiffs allege that "Defendants fraudulently induced [them] to enter into the Purchase Agreement by providing [them] with false and misleading information" in a spreadsheet "regarding the extent to which the PIP work had been completed.  For example, although defendants represented that certain work described above was completed, the work was never actually performed, or was performed in a manner that failed to comply with the properties' respective brand standards." (<u>Id.</u> quoting SAC ¶ 89.)  Plaintiffs' allegation lacks any indication of fraud because they do not plead that defendants had any intent to deceive at the time they made the alleged misstatements or that defendants even knew its alleged representations were false.  Fraudulent intent, or intent to deceive, is an essential element in a claim for fraud.  (<u>Id.</u> at 9, citing <u>Atascadero v. Merrill Lynch, Pierce, Fenner & Smith</u>, 68 Cal.

11

App. 4th 445, 482, 80 Cal. Rptr. 2d 329 (1998).)   To plead

fraudulent intent, a plaintiff must plead facts sufficient to

support an inference of fraud.   (Id. citing Oestreicher v.

Alienware Corp., 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008)

("nothing in the Federal Rules of Civil Procedure relieves a

plaintiff of the obligation to 'set forth facts from which an

inference of scienter could be drawn.'"   (quoting Cooper v.

Pickett, 137 F.3d 616, 628 (9th Cir. 1997)).)

        **c.   The allegations lack Rule 9(b) specificity**

      Plaintiffs' remaining fraud allegations are too vague and

conclusory to meet the specificity required by Rule 9(b).   (Defs.'

Mot. to Dismiss at 10.)   Rule 9(b) provides that, "[i]n alleging

fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake."   The rule serves

several substantive purposes:

> Rule 9(b) serves not only to give notice to
> defendants of the specific fraudulent conduct
> against which they must defend, but also "to
> deter the filing of complaints as a pretext for
> the discovery of unknown wrongs, to protect
> [defendants] from the harm that comes from
> being subject to fraud charges, and to prohibit
> plaintiffs from unilaterally imposing upon the
> courts, the parties and society enormous social
> and economic costs absent some factual basis."

(Id. quoting Bly-Magee v. California, 236 F.3d 1014, 1018 (9th Cir.

2001) (quoting In re Stac Elec. Sec. Litig., 89 F.3d 1399, 1405

(9th Cir. 1996)).)   To meet the requirements of Rule 9(b),

plaintiffs must, at a minimum, specify "the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." (Id. quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).)

Apart from their one allegation regarding statements by Oliver on July 20, 2006, all of plaintiffs' fraud allegations fall short of particularized pleadings. (Defs.' Mot. to Dismiss at 11.)

**B.       Plaintiffs' Opposition**

With the exception of fraud, plaintiffs' claims need only satisfy the notice pleading standards of Rule 8(a) of the Federal Rules of Civil Procedure to survive a motion to dismiss. (Pls.' Opp'n to Defs.' Mot. to Dismiss at 11.)  As to fraud, Rule 9(b) requires the identification of the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations.  (Id.)  The factual circumstances of the fraud itself must be alleged with particularity, but the state of mind, or scienter, of the defendants may be alleged generally.  (Id.)

**1.   Plaintiffs' claim for the breach of the implied covenant of good faith and fair dealing is not duplicative**

Defendants assert that plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is improper because it is based on the same facts as plaintiffs' breach of contract claim, and therefore, should be dismissed. (Pls.' Opp'n to Defs.' Mot. to Dismiss at 12.)  Plaintiffs argue that a claim for breach of the covenant of good faith and fair dealing and a claim for breach of contract

1           will always be based on the same facts; a

2           certain set of circumstances give rise to a

3           lawsuit.  They will always seek the same

4           remedy; the same remedies are available for

5           both claims.  Therefore, the Court should not

6           mechanically inquire whether the same facts are

7           alleged and whether the same remedy is sought.

8           Rather, the challenge brought by Careau and its

9           progeny is to distinguish two claims based on

10          the same facts.

11 (Id. at 12-13, n.66, quoting Celador Int'l Ltd. v. Walt Disney Co.,

12 347 F. Supp. 2d 846, 853 (C.D. Cal. 2004) (holding that the

13 plaintiffs distinguished a breach of contract claim and a claim for

14 breach of the implied covenant of good faith and fair dealing even

15 though both claims were based on the same set of facts and sought

16 the same remedy).)

17      In this action, plaintiffs entered into the Purchase

18 Agreement to purchase the hotels to be operated as franchisees of

19 their respective brands.  (Pls.' Opp'n to Defs.' Mot. to Dismiss at

20 13.)  To obtain a renewed franchise agreement, defendants were to

21 make the improvements required by the franchisors in a manner that

22 complied with the standards of the respective brands.  (Id.)

23 Defendants' failure to perform the PIP work to the standards of the

24 various brands required that the work be redone.  (Id.)  Plaintiffs

25 are now required to complete the PIP work or risk the revocation of

26 the franchise agreement.  (Id.)  Thus, if the franchise agreements

27 are revoked, plaintiffs will be unable to operate the hotels as

28 branded properties and the reason that plaintiffs entered into the

Purchase Agreement would be frustrated.  (Id.)

Consequently, plaintiffs allege that defendants claimed to have completed work that was not completed and that gives rise to a reasonable inference that defendants were acting in bad faith. (Pls.' Opp'n to Defs.' Mot. to Dismiss at 14.)

**2.   Plaintiffs' claim for fraud should not be dismissed**

**a.   Plaintiffs' claim for fraud regarding the San Diego Hotel**

Defendants present three grounds for dismissing plaintiffs' fraud claim relating to representations made regarding the flooring problems at the San Diego Hotel:  (1) the misrepresentations of Sunstone's Vice President cannot be attributed to Sunstone; (2) plaintiffs' reliance on Sunstone's Vice President's misrepresentations was not reasonable; and, (3) Sunstone's Vice President's misrepresentations were not material. (Pls.' Opp'n to Defs.' Mot. to Dismiss at 16.)

First, defendants cannot avoid imputation of the representations of its Vice President.  (Pls.' Opp'n to Defs.' Mot. to Dismiss at 16.)  Under California law, the representations of Sunstone's Vice President are attributable to Sunstone.  (Id. at 16-17, fn 88 citing Cal. Civ. Code § 2330 ("An agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal"); see also Persson v. Smart Inventions, Inc., 125 Cal. App. 4th 1141, 1167, 23 Cal. Rptr. 335 (2005) ("[A] private corporation is generally liable under the doctrine of respondeat

superior for torts of its agents or employees committed while they
are acting within the scope of their employment.").)  Also,
California law imputes the knowledge of corporate agents to the
corporation.  (Id. at 17, fn 90 citing Cal. Civ. Code § 2332 ("As
against a principal, both principal and agent are deemed to have
notice of whatever either has notice of, and ought, in good faith
and the exercise of ordinary care and diligence, to communicate to
the other."); see also People v. Forest E. Olson, Inc., 137 Cal.
App. 3d 137, 140, 186 Cal. Rptr. 804 (1982).)

        Second, plaintiffs allege facts that show they reasonably
relied on defendants' misrepresentations.  (Pls.' Opp'n to Defs.'
Mot. to Dismiss at 18.)  As part of plaintiffs' investigation of
the San Diego Hotel they identified problems with the flooring and
at one point determined they would not purchase that property.
(Id. at n.94 citing SAC ¶ 31.)  When plaintiffs inquired about the
extent of the flooring problems, defendants stated they were
unaware of any reports regarding the San Diego Hotel's flooring
issues and that the flooring problems had been fixed.  (Id. at n.96
citing SAC ¶¶ 60, 65.)  Plaintiffs' reliance on defendants'
representations was not preposterous because there were no reports
showing extensive problems with the floor of the San Diego Hotel.
(Id. at 18-19.)

        Third, defendants' representations were material.  (Pls.'
Opp'n to Defs.' Mot. to Dismiss at 18.)  Plaintiffs considered not
purchasing the San Diego Hotel because of the flooring problems.
(Id.)  Thus, whether a report existed that concluded that extensive
structural repairs to the flooring were necessary was material in
deciding whether to purchase the San Diego Hotel.  (Id. at 19, n.99

citing Engalla, 15 Cal. 4th at 977.)

        **b.    Plaintiffs' claim for fraud regarding PIP work**

        Plaintiffs allege facts to support an inference of fraudulent intent. (Pls.' Opp'n to Defs.' Mot. to Dismiss at 19.) Defendants represented that they completed work when they had not done so. (Id.) Defendants' intent to deceive can be reasonably inferred from defendants' deceptions, such as their false representations regarding the completeness of the PIP work. (Id. at 20, n.102, citing Manta v. Chertoff, 518 F.3d 1134, 1142 (9th Cir. 2008) ("An intent to defraud may be inferred from circumstantial evidence.").)

        **c.    The allegations are sufficiently specific**

        Plaintiffs' allegations regarding the structural defects at the San Diego Hotel are sufficiently specific and should not be dismissed. (Pls.' Opp'n to Defs.' Mot. to Dismiss at 20-21, n.106 citing SAC ¶¶ 60-69.)

**C.    Defendants' Reply**

        **1.    The good faith-fair dealing claim is superfluous**

        Plaintiffs' good faith and fair dealing claim and PIP work contract claim are not merely based on the same alleged facts – they are entirely duplicative. (Defs.' Reply at 2.) In Celador, the court ruled that the plaintiffs' good faith and fair dealing claim should not be dismissed because plaintiffs alleged that the defendants acted in bad faith to frustrate the contract's benefits and thus distinguished their good faith and fair dealing claim. (Id. citing Celador, 347 F. Supp. 2d at 852-53.) Here, Plaintiffs do not distinguish their purported good faith and fair dealing claim from their purported contract claim in any way. (Id.)

Additionally, plaintiffs do not allege that defendants engaged in conscious or deliberate misconduct, an essential element for a breach of the implied covenant of good faith and fair dealing claim. (Defs.' Reply at 2-3.) Plaintiffs do not dispute that they must plead bad faith. (Id. at 3.) Rather, they argue that defendants' actions give rise to a reasonable inference of defendants' bad faith. (Id.) Plaintiffs' allegation that defendants provided incorrect information about six items, amongst hundreds, does not, standing alone, give rise to an inference of intentional or deliberate misconduct. (Id.)

**2. Plaintiffs do not plead a viable fraud claim**

**a. Plaintiffs' structural defect fraud claim fails**

Plaintiffs' alleged structural defect fraud claim fails for at least two reasons: (1) because plaintiffs allege no misrepresentation; and (2) because plaintiffs' own allegations establish that they had actual notice of the alleged defects and could not have justifiably relied on any contrary representations by Defendants. (Defs.' Reply at 3.)

First, the only "misrepresentation" alleged by plaintiffs with any specificity is Oliver's statement that he was not aware of any reports addressing the "lobby floor problems" at the San Diego Hotel. (Defs.' Reply at 3 citing SAC ¶ 60.) Plaintiffs seek to characterize that statement as an intentional misrepresentation because other employees of defendants knew of problems with the ballroom and the letter from Mr. Nowak. (Id.) Defendants contend that plaintiffs' argument that Oliver's representations are attributable to defendants is irrelevant because defendants do not argue that any alleged misrepresentation of Oliver is not their

responsibility.  (_Id._ at n.2.)  Instead, defendants argue that plaintiffs allege no such misrepresentation.  (_Id._)  All other alleged misrepresentations are too vague.  (_Id._ at 4.)

Second, plaintiffs did not reasonably rely on Oliver's alleged statements because plaintiffs had actual knowledge of the issues and contracted to purchase the hotel on an "as-is" basis.  (Defs.' Reply at 4.)  Any such reliance could only be "preposterous" and "amount to a willing blindness to the truth."  (_Id._ citing Pls.' Opp'n to Defs.' Mot. to Dismiss at 18 citing OCM Principal Opportunities Fund, L.P. v. CIBC World Mkt. Corp._, 157 Cal. App. 4th 835, 864, 68 Cal. Rptr. 3d 828 (2007).)  Plaintiffs cannot refute that they were aware of the flooring issues and purchased the hotel anyway.  (_Id._)  Further, the Purchase Agreement only required defendants to provide limited, specified documents and materials to plaintiffs, and plaintiffs agreed and acknowledged that such documents and materials, and any other information provided by defendants, would come with no "representation or warranty of any kind by [defendants] (either express or implied) as to the accuracy, completeness or validity thereof" and defendants would have no "obligation or liability with respect to any of the matters set forth therein."  (_Id._ at n.3; _see also_ Laurendeau Decl., Ex. A, § 3.1.1.)

Additionally, plaintiffs did not delay purchasing the San Diego Hotel after discovering the flooring issue.  (Defs.' Reply at 5.)  Plaintiffs allege that Oliver made his representations on July 20, 2006.  (_Id._)  This was prior to the termination and reinstatement of the Purchase Agreement with respect to the San Diego Hotel. (_Id._ citing SAC ¶ 60.)  The parties terminated the

Purchase Agreement in connection with the San Diego Hotel on August 11, 2006, and then reinstated the Purchase Agreement on September 6, 2006. (<u>Id.</u>; <u>see also</u> Laurendeau Decl., Exs. F, K.)

### b. The PIP work allegations do not plead fraud

Plaintiffs' PIP work fraud allegations amount to nothing more than a purported claim for breach of contract. (Defs.' Reply at 5.) Considering the size of the transaction and the extent of the PIP work, plaintiffs' allegation is simply not sufficient to allege fraud. (<u>Id.</u>)

### 3. Plaintiffs should not be granted leave to amend

Plaintiffs' allegations and arguments make clear that plaintiffs cannot plead valid bad faith and fraud claims against defendants because they have no facts to support the allegations. (Defs.' Reply at 6.) Further amendment would be futile because plaintiffs already had two opportunities to amend. (<u>Id.</u>)

**IV.**

**<u>LEGAL STANDARD</u>**

**A.    Dismissals under 12(b)(6)**

A court may grant dismissal when the complaint fails to state a claim upon which relief may be granted. <u>See</u> Fed. R. Civ. P. 12(b)(6). A well-pleaded complaint must proffer "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). This standard does not require a plaintiff to "plead specific facts in detail, just sufficiently to identify the grounds for alleging that the legal theory applies." <u>Kelly v. Provident Life & Acc. Ins.</u>, Nos. 04-5665, 05-55270, 2007 WL 2389870 (9th Cir. Aug. 20, 2007). Consequently, a Rule 12(b)(6) motion

should be granted where the plaintiffs have failed to "nudge[ ]
their claims across the line from conceivable to plausible."
Twombly, 127 S. Ct. at 1964.  "Dismissal can be based on the lack
of a cognizable legal theory or the absence of sufficient facts
alleged under a cognizable legal theory."  Balistreri v. Pacifica
Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  "[A] plaintiff's
obligation to provide the 'grounds' of his 'entitle[ment] to
relief' requires more than labels and conclusions, and a formulaic
recitation of the elements of a cause of action will not do."
Twombly, 127 S. Ct. at 1964-65 (citation omitted).

**B.      Leave to Amend**

          Under Federal Rule of Civil Procedure 15(a), leave to
amend should be freely granted "when justice so requires."  Fed. R.
Civ. P. 15(a).  On a motion to dismiss, the Court must grant leave
to amend unless it "'determines that the pleading could not
possibly be cured by the allegation of other facts.'"  Lopez v.
Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (citing Doe v. United
States, 58 F.3d 494, 497 (9th Cir. 1995)); see also Steckman v.
Hart Brewing, Inc., 143 F.3d 1293, 1298 (9th Cir. 1998) (noting
that leave to amend should be granted unless it would be an
"exercise in futility").

**V.**

**DISCUSSION**

**A.      Breach of the Implied Covenant of Good Faith and Fair
         Dealing**

          Plaintiffs allege that defendants identified certain PIP
work as completed when, in fact, the work was not completed or not
performed in conformity with the properties' brand standards as

required by the Purchase Agreement.  (SAC ¶ 73.)  Consequently,
unless plaintiffs performed the PIP work that defendants failed to
complete, plaintiffs would not receive franchise licenses from the
franchisor.  (Id.)  Plaintiffs claim that defendants' failure to
abide by the Purchase Agreement constitutes a breach of the implied
covenant of good faith and fair dealing.  (Id. at ¶ 74.)

In every contract, the law implies a covenant of good
faith and fair dealing.  See Egan v. Mut. of Omaha Ins. Co., 24
Cal. 3d 809, 818, 169 Cal. Rptr. 691 (1979); see also Careau & Co.,
222 Cal. App. 3d at 1393.  The implied promise requires that the
contracting parties must refrain from engaging in any act that will
injure the rights of the other to receive the benefits of the
agreement.  See Careau & Co., 22 Cal. App. 3d at 1393.

"A breach of the implied covenant of good faith and fair
dealing involves something beyond breach of the contractual duty
itself and it has been held that bad faith implies unfair dealing
rather than mistaken judgment."  Id., at 1394 (internal quotations
omitted).  To properly allege a breach of the covenant, Plaintiffs'
allegations

> must show that the conduct of the defendant,
> whether or not it also constitutes a breach of
> a consensual contract term, demonstrates a
> failure or refusal to discharge contractual
> responsibilities, prompted not by an honest
> mistake, bad judgment or negligence but rather
> by a conscious and deliberate act, which
> unfairly frustrates the agreed common purposes
> and disappoints the reasonable expectations of

1            the other party thereby depriving that party of

2            the benefits of the agreement.

3 Id. at 1395.  Moreover, "[i]f the allegations do not go beyond the

4 statement of a mere contract breach and, relying on the same

5 alleged acts, simply seek the same damages or other relief already

6 claimed in a companion contract cause of action, they may be

7 disregarded as superfluous as no additional claim is actually

8 stated."  Id.; see also Guz, 24 Cal. 4th at 326-27 (finding that

9 "where breach of an actual term is alleged, a separate implied

10 covenant claim, based on the same breach, is superfluous").

11       Here, plaintiffs allege both a claim for breach of

12 contract and claim for breach of the implied covenant of good faith

13 and fair dealing based on defendants' purported failure to complete

14 the required PIP work.  Compare SAC ¶ 79 (breach of contract claim

15 for failure to complete or adequately perform the PIP work) with

16 SAC ¶ 73 (breach of the implied covenant of good faith and fair

17 dealing claim for failure to compete or adequately perform the PIP

18 work).  Plaintiffs do not set forth any allegations in their SAC or

19 Opposition to raise a reasonable inference that defendants' failure

20 to complete or adequately perform the PIP work was the result of

21 bad faith with the intent to deprive plaintiffs of some or any

22 benefits of the Purchase Agreement.  See Careau & Co., 222 Cal.

23 App. 3d at 1394.

24       Plaintiffs cite Celador Int'l Ltd. v. Walt Disney Co.,

25 347 F. Supp. 2d 846 (C.D. Cal. 2004) for the proposition that a

26 claim for breach of contract and a claim for breach of the implied

27 covenant of good faith and fair dealing can be based on the same

28 alleged facts.  While that proposition is true, the facts in

Celador are distinguishable from the instant case.  In Celador,
plaintiffs alleged that defendants acted in bad faith to
intentionally frustrate plaintiffs' enjoyment of their rights under
the contract.  See Celador Int'l Ltd., 347 F. Supp. 2d at 852-53.
By contrast, plaintiffs here do not distinguish the good faith-fair
dealing claim from the breach of contract claim.  Both are based on
the same facts, and plaintiffs do not allege that defendants
breached the contract with the intent to frustrate plaintiffs'
ability to gain the benefits provided by the contract.  Nor do
plaintiffs allege bad faith.  If the two claims "cannot be
distinguished, then the natural conclusion is that they are
duplicative."  Id. at 853.

Plaintiffs' claim for breach of the implied covenant of
good faith and fair dealing and claim for breach of contract in the
SAC are duplicative.  Plaintiffs expressly ask for leave to amend
and suggest how they might cure any deficiency.  (Pls.' Opp'n to
Defs.' Mot. to Dismiss at 14-15.)  Because it cannot be said that
the pleading could not possibly be cured by amendment, amendment
will be allowed.  Accordingly, plaintiffs' claim for breach of the
implied covenant of good faith and fair dealing is dismissed with
leave to amend.

**B.      Plaintiffs' Claim for Fraud**

Defendants seek dismissal in part on the ground that
plaintiffs have failed to comply with the heightened pleading
requirements of Rule 9(b).  Rule 9(b) provides:

> In alleging fraud or mistake, a party must state
> with particularity the circumstances constituting
> fraud or mistake.  Malice, intent, knowledge, and

1   other condition of a person's mind may be alleged

2   generally.

3   Fed. R. Civ. P. 9(b).  The purpose of Rule 9(b) is "not only to

4   give notice to defendants of the specific fraudulent conduct

5   against which they must defend, but also 'to deter the filing of

6   complaints as a pretext for the discovery of unknown wrongs, to

7   protect [defendants] from the harm that comes from being subject to

8   fraud charges, and to prohibit plaintiffs from unilaterally

9   imposing upon the court, the parties and society enormous social

10  and economic costs absent some factual basis.'"  Bly-Magee, 236

11  F.3d at 1018 (quoting In re Stac Elec. Sec. Litig., 89 F.3d at

12  1045).

13       Accordingly, all allegations of fraud must be accompanied

14  by "the who, what, when, where, and how of the misconduct charged."

15  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003)

16  (internal quotation omitted).  "When pleading fraud, a complaint

17  must adequately specify the statements it claims were false or

18  misleading, give particulars as to the respect in which plaintiff

19  contends the statements were fraudulent, state when and where the

20  statements were made, and identify those responsible for the

21  statements."  Glen Holly Entm't, Inc. v. Tektronix, Inc., 100 F.

22  Supp. 2d 1086, 1094 (C.D. Cal. 1999) (internal citations omitted).

23  Allegations of fraud must be "specific enough to give defendants

24  notice of the particular misconduct which is alleged to constitute

25  the fraud charged so that they can defend against the charge and

26  not just deny that they have done anything wrong."  Neubronner v.

27  Milken, 6 F.3d 666, 671 (9th Cir. 1993) (explaining that a pleading

28  is sufficient if it "identifies the circumstances constituting

fraud so that the defendant can prepare an adequate answer from the allegations") (citations and internal quotations omitted).

Plaintiffs state that defendants committed fraud based on two allegations:  (1) they induced plaintiffs to enter into the Purchase Agreement by misrepresenting the existence of and failing to disclose material information regarding structural defects at the San Diego Hotel; and (2) defendants induced plaintiffs to enter into the Purchase Agreement by providing plaintiffs with false and misleading information regarding the extent to which the PIP work had been completed.  (SAC ¶¶ 87-89.)

### 1.    The structural condition of the San Diego Hotel

Plaintiffs allege defendants misrepresented the structural condition of the San Diego Hotel on two occasions:  (1) when Oliver represented that he "was not aware" of any specific reports that addressed the floor; and (2) on at least two occasions prior to closing Oliver told Martin that any problems with the floors at the San Diego Hotel had been fixed.  (SAC ¶¶ 60, 65.)

### 2.    Defendants' statement concerning structural reports

Plaintiffs allege that Oliver misled them into entering into the Purchase Agreement to purchase the San Diego Hotel when he stated that he "was not aware of any specific reports that address the floor," on July 20, 2006, when, in fact, other of employees of defendants were aware of structural reports as evidenced by the June 2006 e-mail correspondence between Lane and other employees of defendants and the 2005 letter from Mr. Nowak to Lane.  (SAC ¶¶ 60, 62-64.)  Plaintiffs allege that Oliver's statement was a "patent misrepresentation."  (Id. at ¶ 64.)

Plaintiffs' fraud allegation surrounding Oliver's July

20, 2006 statement suffices to state a claim for fraud.  Plaintiffs
plead the specific statement made by Oliver that is allegedly false
or misleading.  Further, plaintiffs state why the statement was
fraudulent and when and to whom the statement was made.  See Glen
Holly Entm't, Inc., 100 F. Supp. 2d at 1094.  Thus, the SAC
contains sufficient detail to give defendants proper notice of the
fraud claim and complies with the pleading standard of Rule 9(b).

Defendants also argue that Oliver's representation did
not concern a material fact and that plaintiffs could not have
reasonably relied on Oliver's representation.  As a matter of
pleading, however, these allegations are sufficient for plaintiffs'
fraud claim.  Whether defendants' statement addressed a material
fact or if plaintiffs' reliance on that statement was reasonable is
not properly decided in motion practice because they raise
questions of fact and not law.  See Blankenheim v. E. F. Hutton &
Co., 217 Cal. App. 3d 1463, 1475, 266 Cal. Rptr. 593 (1990)
(holding that reasonable reliance in a fraud action is ordinarily a
question of fact, "[e]xcept in the rare case where the undisputed
facts leave no room for a reasonable difference of opinion"); West
Shield Investigations & Sec. Consultants v. Superior Court, 82 Cal.
App. 4th 935, 957, 98 Cal. Rptr. 2d 612 (holding "[q]uestions of
materiality and justifiable reliance constitute questions of
fact").

### 3.  Defendants' remaining statements

Because the foregoing allegations of fraud suffice to
state a claim under the pleading rules and because the remaining
allegations are not so "vague or ambiguous that the [defendants]
cannot reasonably prepare a response," the Court denies defendants'

motion to dismiss the third claim as well as the alternatively requested relief, a more definite statement.

**VI.**

**CONCLUSION**

Accordingly and for the foregoing reasons, the Court grants defendants' motion to dismiss in part with leave to amend. Defendants' motion to dismiss is granted as to claim one, breach of the implied covenant duty of good faith and fair dealing.  The remainder of defendants' motion to dismiss is denied.

Plaintiffs' Third Amended Complaint, if any, shall be filed no later than February 23, 2009.  Failure to timely file a Third Amended Complaint shall result in a dismissal of claim one, as stated above, with prejudice.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order on counsel for all parties in this action.

DATED:  February 5, 2009.

ALICEMARIE H. STOTLER
_____
ALICEMARIE H. STOTLER
UNITED STATES DISTRICT JUDGE